UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENESIS MERCHANT PARTNERS, L. P., | Civil No. 11-1589-JM(WVG) |
| Plaintiff, | ORDER SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' OBJECTIONS TO PRODUCTION OF DOCUMENTS |
| v. | |
| NERY'S USA, et al., | |
| Defendants. | |

On April 17, 2012, the Court received letters from counsel regarding Defendants' objections to producing documents to Plaintiff. Defendants object to producing agreements between themselves and Blue Line Food Service Distribution, Inc. ("BL"), and between themselves and Little Caesars Enterprises, Inc. ("LC").[1]

The Court, having reviewed the letters of counsel and GOOD CAUSE APPEARING, HEREBY SUSTAINS in part and OVERRULES in part Defendants' objections to the production of contracts between

---

[1] Plaintiff's March 23, 2012 Requests for Production of Documents to Nery's (No. 16) and to Defendant Commercial Targa ("Targa") (No. 11) request production of "Any contracts between Little Caesars Enterprises, Inc./Blue Line and (Nery's/Targa)"

Defendants and Blue Line Distribution, Inc., and Little Caesars Enterprises, Inc.

I

FACTUAL BACKGROUND

In March 2008, Plaintiff received a promissory note from Third Party Defendant Nascent Wine Company, Inc. ("Nascent") in the amount of $1 million ("Nascent Note"). In February 2010, Nery's entered into a Stock Purchase Agreement ("SPA") with Nascent and Targa, a wholly owned subsidiary of Nascent. As part of the SPA, Nery's acquired almost all of Targa's stock. In consideration, Nery's assumed Targa's accounts payable not to exceed $150,000, and executed a promissory note payable to Nascent in the amount of $1,850,000 ("2nd Note") which was the balance then due to Plaintiff in the Nascent Note. Apparently, all parties involved in the SPA and the execution of the 2nd Note were aware that Nascent would assign the 2nd Note to Plaintiff. On February 10, 2010, the assignment of the 2nd Note was made to secure Nascent's obligations under the Nascent Note. Pursuant to the assignment, Nascent directed Nery's to make all payments due on the 2nd Note directly to Plaintiff. Plaintiff's rights are derivative as the assignee of Nascent.

In 2010, Nery's stopped making payments to Plaintiff on the 2nd Note. Based on Nery's failure to pay, Plaintiff filed a Complaint in this Court, alleging breach of contract, unjust enrichment, conversion and negligent misrepresentation.

In 2011, Nery's filed a Third Party Complaint against Nascent and a Counter-Claim against Plaintiff.[2] The Third Party Complaint alleges that before the SPA was signed, Nascent failed to completely

---

[2] On January 6, 2012, the Counter-Claim was dismissed.

1   disclose Targa's liabilities. As a result of the incomplete
2   disclosure, Nery's alleges that it was forced to divert its capital
3   to address Targa's undisclosed liabilities. Consequently, Nery's
4   claims damages for its inability to build Targa's business and
5   increase Targa's value, as it would have done had the disclosure of
6   Targa's liabilities been complete.

7   During the Early Neutral Evaluation Conference ("ENE")[3] in
8   this matter, Plaintiff learned that in October 2010, *after the SPA*
9   *was signed and the assignment of the 2nd Note to Plaintiff*, Nery's
10  and Targa entered into an agreement with BL/LC. This agreement, the
11  terms of which will not be fully described in this Order, was a new
12  business relationship and no prior business arrangement existed
13  between Nery's, Targa and BL/LC. Also, during the ENE, Plaintiff
14  insisted that it needed to know the details of Nery's and Targa's
15  agreement with BL/LC to evaluate potential settlement of this
16  matter.

17                                II

18                            DISCUSSION

19  As noted above, the Court received letters from counsel
20  regarding the production of the Nery's/Targa agreements with BL/LC.
21  In Defendants' letter, Defendants informed the Court that they
22  objected to production of the Nery's/Targa-BL/LC agreements.
23  Specifically, Defendants argue that the agreements are not relevant
24  to any claim or defense in this action and contain proprietary
25  information that is designated as "Confidential Information."
26  Defendants also posit that production of the agreements will not be

27  _____

28       [3] Plaintiff's current counsel did not represent Plaintiff, nor did they appear, at the ENE.

protected by the Protective Order in place in this case because Plaintiff has already announced its intent to contact BL and LC.

### A. Relevance

Defendants argue that Plaintiff seeks information pertaining to a business transaction between themselves and an independent third party that was executed several months after the SPA and 2nd Note were executed. Therefore, the agreements memorializing the transaction have no bearing on Targa's value at the time the SPA and 2nd Note were executed. Further, Defendants argue that Plaintiff's Complaint does not contain any allegations relating to the agreements.

Plaintiff argues that the agreements are relevant and reasonably could lead to the discovery of admissible evidence. Specifically, Plaintiff contends that since Defendants have asserted that they were misled about Targa's liabilities, and suffered damages as a result, the amount of damages offset the amount Nery's owed to Nascent on the 2nd Note. Consequently, Targa's post-acquisition performance (including the Nery's/Targa-BL/LC agreements) are at issue in this litigation because the agreements will determine whether Targa has been unable to operate profitably, and expand and protect its business, and suffered damages which offset the amount owed under the 2nd Note.

Further, Plaintiff asserts that is reasonable to assume that before the agreements were executed, BL/LC would have required information to ascertain Nery's/Targa creditworthiness. Plaintiff also suggests that if Nery's/Targa were financially liable to others, BL/LC would not have executed the agreements.

1    Additionally, Plaintiff argues that it does not have to
2 accept Defendants' representations that their agreement with BL/LC
3 was initiated in October 2010, and that there may have been prior
4 contracts, or that Defendants and BL/LC were actually conducting
5 business with each other prior to the memorialization of the
6 agreement. Therefore, if Nery's/Targa was discussing a business
7 arrangement with BL/LC prior to the execution of the agreement, this
8 fact would have bearing on whether Nery's was truly misled as to
9 Targa's financial condition.
10    Finally, Plaintiff argues that Defendants disclosed the
11 existence of the BL/LC agreements at the ENE in this case. There-
12 fore, the agreements are not protected from disclosure due to the
13 discussions about them at the ENE.

### B. The Nery's/Targa-BL/LC Agreements Are Not Relevant To Any Claim Or Defense In This Action

15    The Court agrees with Defendants. Nery's/Targa agreements
16 with BL/LC were executed months after the SPA and 2nd Note were
17 executed. Therefore, the agreements are not relevant to Targa's
18 value and liabilities at the time the SPA and 2nd Note were executed.
19 The agreements are nothing more than the memorialization of a
20 business transaction between Nery's/Targa and independent third
21 parties after the SPA and 2nd Note were executed. Consequently, they
22 are not relevant to any claim or defense in this action and are not
23 likely to lead to the discovery of admissible evidence. See G.K. Las
24 Vegas, Ltd. Partnership v. Simon Property Group, Inc., 2008 WL
25 5083700 (D. NV 2008).
26    Plaintiff argues, and the Court acknowledges, that the scope
27 of discovery is broad. Jardin v. Datallegro, Inc., 2011 WL 1769835
28 at *1 (S.D. Cal. 2011), Epstein v. MCA, 54 F.3d 1422, 1423 (9th Cir.

1995). However, while expansive, there are limits to discovery. In this case, the issues are whether Nery's breached any obligation it had under the 2nd Note to pay Plaintiff, the assignee of the 2nd Note from Nascent, and whether Nery's misrepresented facts at the time the assignment was executed. Defendants have argued that the assignee stands in the shoes of the assignor. <u>Creative Ventures, LLC v. Jim Ward & Associates</u>, 195 Cal. App 4th 1430, 1447 (2011), <u>Washington Capitols Basketball Club v. Barry</u>, 304 F. Supp 1193, 1200 (C.D. Cal. 1969). While standing in the assignor's shoes, the assignee enjoys the benefits of any rights and remedies the assignor may have SUBJECT to any defenses the obligor has against the assignor. <u>Creative Ventures</u>, <u>supra</u>, at 1447. Even Plaintiff acknowledges this, but only half-way, as set forth in paragraph nos. 39 and 46 of its Complaint. Plaintiff acknowledges that it is entitled to payments as the assignee, but conveniently ignores the potential offset defenses available to Nery's. The facts presented to the Court clearly indicate that the Nery's/Targa-BL/LC agreement was entered into months after the assignment. The Court strains to understand Plaintiff's argument, in the context of this case, how the subsequent agreement is relevant.

If it is true as Defendants have suggested, that they are entitled to an offset to the amount owed on the 2nd Note, then that offset flows to Plaintiff as an assignee. Targa's post-acquisition financial condition is not relevant to its financial condition at the time the SPA and 2nd Note were executed. In other words, what Nery's did after it discovered it had been misled as to Targa's value and liabilities, simply has no bearing on any claim or defense in this action. Moreover, while it may be reasonable for Plaintiff

to assume that BL/LC would have required information from Nery's/Targa regarding their creditworthiness, such an assertion is speculative and also has no bearing on any claim or defense in this action.

However, even if the agreements themselves are not relevant to any claim or defense in this action, the Court agrees with Plaintiff that it does not have to accept Defendants' representations regarding their business arrangement with BL/LC. *When* Nery's/Targa's negotiations and business arrangement with BL/LC began and *when* the agreements were actually executed, may or may not have some relevance as to Targa's financial condition at the time the SPA and 2nd Note were executed. Therefore, on or before <u>May 22, 2012</u>, Nery's/Targa shall provide Plaintiff with the dates as noted above in a declaration signed under penalty of perjury.

The Court's Notice of ENE in this action clearly states that all discussions at the ENE are privileged and confidential. The Court believes that the views and positions taken by counsel at the ENE, and disclosure of information at the ENE, were confidential, and cannot be used by either Plaintiff or Defendants in this litigation, without formally requesting the information. Here, Plaintiff requested production of the BL/LC agreements, to which Defendants objected. The Court finds no sinister or unethical conduct by Plaintiff in requesting the agreements. Also, the Court agrees entirely with Plaintiff that merely mentioning certain facts within the confines of an ENE does not shield those facts from discovery.

Finally, without revealing the communications of counsel and the parties at the ENE, the Court views Plaintiff's requests for the

1 | BL/LC agreements as an attempt to discover whether Defendants can
2 | satisfy a judgment that may be entered in its favor in the future.
3 | However, courts generally do not allow pre-judgment discovery
4 | regarding a defendant's financial condition or ability to satisfy a
5 | judgment, on the grounds that such information is not relevant to
6 | the parties' claims or defenses and is not reasonably calculated to
7 | lead to the discovery of admissible evidence. <u>Sierrapine v. Refiner</u>
8 | <u>Products Mfg., Inc.</u>, 275 F.R.D. 604, 609-610 (E.D. Cal. 2011).
9 |     As a result of the foregoing, Defendants' objections to
10 | Plaintiff's requests for production of the Nery's/Targa-BL/LC
11 | agreements are SUSTAINED in part and OVERRULED in part.
12 |     Consequently, the Court does not reach, nor does it state an
13 | opinion regarding, Defendants' argument that the agreements contain
14 | confidential information and should be protected from disclosure for
15 | that reason.
16 | DATED:  May 8, 2012

_____
Hon. William V. Gallo
U.S. Magistrate Judge